FEDERAL FIREFIGHTERS
ASSOCIATION, LOCAL 1,
et al., Plaintiffs,

v.

UNITED STATES of America, et
al., Defendants.

Civ. A. No. 88–1022–LFO.

United States District Court,
District of Columbia.

March 30, 1989.

See also, 723 F.Supp. 825.

Patti A. Goldman, Alan B. Morrison, Public Citizen Litigation Group, Anton G. Hajjar, O'Donnell, Schwartz & Anderson, Washington, D.C., for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Sandra M. Schraibman, Marcia K. Sowles, Attys., Dept. of Justice, Civ. Div. (Roslind A. Knapp, Deputy Gen. Counsel, Diane R. Liff, Asst. Gen. Counsel for Litigation, Miguel R. Rovira, Trial Atty., U.S. Dept. of Transp., of counsel), Washington, D.C., for defendants.

Richard J.M. Poulson, Peter W. Tredick, Paul C. Skelly, Hogan & Hartson (Edward S. Faggen, Robert R. Merhige, III, Metropolitan Washington Airports Authority, of counsel), William T. Coleman, Jr., Donald T. Bliss, Debra A. Valentine, O'Melveny & Myers (Gregory Wolfe, Edward S. Faggen, Metropolitan Washington Airports Authority, of counsel), Washington, D.C., for defendant Metropolitan Washington Airports Authority.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

This case involves interpretation of the collective bargaining provisions of the 1986 Metropolitan Washington Airports Act ("Transfer Act"). In 1986, Congress authorized the Secretary of Transportation ("Secretary") and the Airports Authority to enter into a lease to transfer the operation of the Metropolitan Washington Airports from the Federal Aviation Administration ("FAA") to the Metropolitan Washington Airports Authority. Congress established certain minimum terms and conditions for the lease, including the provision that "the Airports Authority shall continue all collective bargaining rights enjoyed before the date the lease takes effect by employees of the Metropolitan Washington Airports," 49 U.S.C.App. § 2454(c)(6)(D), and the provision that "the Secretary shall ensure that the Airports Authority has established arrangements to protect the employment interests of employees during the five-year period" beginning on the effective date of the lease. 49 U.S.C.App. § 2457(a). Plaintiffs Federal Firefighters Association contend that the United States, the Secretary of Transportation and the Department of Transportation ("federal defendants") and the Metropolitan Washington Airports Authority ("MWAA") have misconstrued the collective bargaining provisions of the Transfer Act to the detriment of the firefighters' union. Plaintiffs also claim that the federal defendants have failed to meet their statutory mandate to ensure through the lease the employee protections in the Transfer Act.

### II.

This case is before the court on three cross-motions for summary judgment. Plaintiffs argue that they have the right to bargain over all conditions of employment unless the conditions are established by statute, or, in the alternative, that all proposals other than specific wage rates are negotiable. Plaintiffs further argue that MWAA employees have the right to strike, since they are no longer federal employees. They argue that although the Commonwealth of Virginia and the District of Columbia have passed legislation prohibiting airport employees from striking, and although 5 U.S.C. § 7311 prohibits federal employees from striking, because the Transfer Act does not prohibit strikes and because the MWAA was required to be independent of both Virginia and D.C., "these jurisdictions have no right to impose their idea of the public policy applicable to the rights of employees." Plaintiffs also contend that the sick and annual leave accrual rates and the health insurance programs offered by the MWAA do not comply with the Transfer Act. Plaintiffs cite to 49 U.S.C.App. § 2457(d), which states "... annual and sick leave shall be earned at the same rates permitted on the day before [the date the lease takes effect]." Plaintiffs claim that the day before the effective date of the lease, firefighters earned sick and annual leave at a higher rate than after the MWAA change. Plaintiffs also claim that their choice of health insurance programs has been limited after the transfer and that the programs now offered to them are not "reasonably comparable" to those offered to them when they were FAA employees.

Defendant MWAA and the federal defendants oppose plaintiffs' motion, and argue that the lease meets the requirements of the Transfer Act and that plaintiffs are simply dissatisfied with the protections Congress incorporated and want this court to re-legislate the provisions of the Transfer Act by granting plaintiffs the right to bargain collectively over subjects over which they were unable to bargain when they were FAA employees. Defendants cite the Transfer Act's requirement that the MWAA "make and maintain agreements with employee organizations to the extent that the Federal Aviation Administration is so authorized," 49 U.S.C.App. § 2456(c)(5). Defendant MWAA argues persuasively that the clear language of the Transfer Act and Senator Sarbanes' explanation of its intent make clear that Congress did not grant expanded bargaining

rights following the transfer. Defendants further argue that FAA employees were prohibited from striking, which prohibition was continued when these employees became MWAA employees, that the Transfer Act grants no strike rights, and that it is settled law that public employees have no constitutional right to strike. Defendants contend that, like wages, matters such as holidays, sick and annual leave, and insurance premiums were set by statute and were not subject to collective bargaining, and that plaintiffs' claim that such matters are now subject to negotiations contradicts the terms of the Transfer Act. MWAA also argues that plaintiffs' claim regarding sick and annual leave accrual rates is unfounded. After the transfer, MWAA reduced the number of work hours for plaintiffs from 72 hours to 56 hours per week, (without any reduction in plaintiffs' salary.) At the same time, MWAA adjusted annual and sick leave accrual rates to the rates permitted for employees who work 56 hours per week. Defendants contend that annual and sick leave is currently earned at the same rates permitted on the day before the date of the transfer; the only change is the number of work hours.

### III.

The standard of review for these motions, which address the interpretation of the Transfer Act, is that the Secretary of Transportation's interpretation of the Act as reflected in the lease's conditions is entitled to deference if her interpretation is a permissible construction. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). Such agency determinations should be overturned only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See American Federation of Gov't Employees, Local 2303 v. Federal Labor Relations Authority,* 815 F.2d 718, 719 (D.C.Cir.1987).

In this case, the language of the lease closely tracks the language of the Transfer Act. Apparently, the Secretary interpreted the Transfer Act as authorizing, if not requiring, her to identify those transactions that had in fact been bargained or were legally bargainable under the FAA, and to ensure that rights enjoyed before the date the lease takes effect continue. On June 5, 1987, the Secretary signed the lease, certifying that all conditions in Articles 15 and 20 of the lease had been satisfied. Article 15 requires MWAA to fulfill to the reasonable satisfaction of the Secretary, several independent conditions precedent to the lease, including continued employment rights, rights of terminated employees, and annual and sick leave. Article 20 involves insurance covenants and risk management plans. Exhibit A to Federal Defendants' motion for summary judgment. It is possible to interpret the Transfer Act as plaintiffs do to require the Secretary to ascertain the reasons why a particular issue was not bargainable prior to the transfer and re-examine whether it now would be bargainable because of the different legal status of the MWAA. It was also reasonable, however, to follow the interpretation applied by the Secretary, and to track the statutory language and generalize as to what was bargainable.

 The issues are therefore resolvable by an analysis of undisputed facts. Defendants have demonstrated that wages, hours, sick and annual leave accrual rates, funeral leave, compensatory time, meals and insurance were not bargainable when plaintiffs were FAA employees. Affidavit of Patricia E. Stevens, attached as Exhibit H to MWAA'S motion for summary judgment. Defendants have concluded reasonably that these items are thus not now bargainable. In addition, it was reasonable for defendants to conclude that other working conditions prescribed by Congress in 49 U.S.C.App. § 2457 for MWAA employees, such as observance of official holidays, are also not bargainable. As to the right to strike, the Virginia and D.C. legislation, continuing the prohibition against strikes that applied to the employees when they were federal employees, is consistent with reasonable interpretation of the Transfer Act, whereby Congress intended the transferring employees to have the same rights after the transfer that they enjoyed before

the transfer. Moreover, public employees have no constitutional right to strike. *United Federation of Postal Clerks v. Blount*, 325 F.Supp. 879, 882 (D.D.C.) (three-judge court), *aff'd mem.*, 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971).

■ With regard to interpretation of the statutory requirement that the MWAA provide comparable health insurance, the Transfer Act requires that at least one life insurance and three health insurance programs be offered to transferred employees, and that they be "reasonably comparable ... to the Federal health and life insurance programs available to employees on the day before [the date the lease takes effect]." 49 U.S.C.App. § 2457(a)(5). The Secretary requested that the Office of Personnel Management, ("OPM"), the agency responsible for overseeing the federal insurance programs under 5 U.S.C. §§ 8706, 8902, review the specifications for the life and health insurance programs proposed by the MWAA. After review, the OPM found that any plans offered pursuant to the MWAA's specifications would be reasonably comparable to plans offered to federal employees. Declaration of Nancy H. Kichak, attached as Exhibit B to federal defendants' motion for summary judgment. The MWAA now offers four health insurance plans—one service benefit plan and three comprehensive medical plans. Plaintiffs argue that, because of geographic limitations, at least seventeen members of the bargaining unit can benefit from only one of the four plans offered to employees after the transfer. The MWAA contends, however, that it cannot, with a comparatively small group of employees, offer the vast array of programs available to federal employees and that it has offered "reasonably comparable" programs. Defendants also note that plaintiffs have presented no basis for this court to decline to give deference to the determinations of the OPM and the Secretary that the MWAA's health plan offerings comply with the Transfer Act. Defendants correctly contend that plaintiffs have failed to show a reasoned basis upon which this court should refuse to accord defendants proper deference under 5 U.S.C. § 706(2), which specifies that such determinations may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."

A question remains about the promulgation of a labor code. Plaintiffs claim that the labor code is *ultra vires* and that it includes limitations on employees' rights not mentioned in the Transfer Act. In addition, plaintiffs now seek to amend their second amended complaint to add new challenges to the validity of the labor code, including a constitutional challenge based on the composition of the the MWAA's Board of Review. Defendants oppose plaintiffs' motion to amend, contending that the promulgation of a labor code (adopted after notice and comment procedures) was authorized by the Transfer Act's enabling legislation, which gave MWAA authority to adopt regulations to carry out the powers granted to it, and that it was required by the lease. Defendants further argue that plaintiffs have unduly delayed in bringing this new claim and that the claim is futile. The final version of the Labor Code was approved by the Board of Directors in November 1988 and became effective on February 1, 1989. Plaintiffs moved to amend their complaint on February 13, 1989. Because resolution of this issue should not necessitate development of new facts and accordingly should not prejudice the parties, plaintiffs' motion to amend their complaint should be granted and the labor code issue should be briefed and argued.

Accordingly, an accompanying order will grant defendants a partial summary judgment, deny plaintiffs' motion for summary judgment, grant plaintiffs' motion to amend the complaint, and establish a further briefing schedule.

### ORDER

For reasons stated in the accompanying Memorandum, it is this 30th day of March, 1989, hereby

ORDERED: that plaintiffs' motion to amend the second amended complaint shall

be, and is hereby, GRANTED; and it is further

ORDERED: that defendants shall be, and are hereby, GRANTED a partial summary judgment; and it is further

ORDERED: that plaintiffs' motion for summary judgment shall be, and is hereby, DENIED; and it is further

ORDERED: that any motions for summary judgment with respect to the labor code issues presented in the third amended complaint may be filed on or before *April 19, 1989*, any oppositions may be filed on or before *May 9, 1989*, and any replies may be filed on or before *May 23, 1989*.